the case of Andrews v. Officer Robert and I'm going to ask how you pronounce the last name of the Scuilli. Scuilli. Scuilli. Alright Mr. O'Brien are you ready to proceed? I am your honor. Mr. O'Brien. May it please the court my name is Timothy O'Brien. I have the honor this morning of representing David Andrews who experienced the worst name in the citizen can experience in our country and managed to be wrongfully accused of a grievous crime that he didn't commit. And even worse to be accused of a crime based upon an aggravated probable cause that contained misrepresentations and omissions and was false. It is our contention in this case that the lower court erred in granting summary judgment on the issue of whether a reasonable jury could conclude that no probable cause existed for the charges brought against Mr. Andrews. This court has repeatedly stated in Halsey, in the Reid case, most recently in the Dempsey case, that the issue of probable cause is a question of fact for the jury. This court has also made it very clear that, particularly in a malicious prosecution case, that all of the inferences are to be drawn in favor of the non-group party. That didn't happen here. The court in this case not only needed to give Mr. Andrews the benefit of the inferences that he was entitled to, on several instances the court misstated the record on critical issues. Give us the specifics. Specific examples would be regarding the vehicle. The vehicle was identified by the victim initially as a red four-door sedan. The vehicle had one unique identifier, which was the license plate, P-A-C-G. The court, in its findings, indicated that there was no error in the affidavit of probable cause with respect to the officer identifying and stating in the affidavit of probable cause that the vehicle was the same. In his affidavit of probable cause, he says that the victim saw the vehicle and the vehicle on the second day was the same. The record indicated that Officer Shuley, on the second day, went to the parking lot, saw the vehicle, knew it wasn't a four-door sedan, knew that it was a two-door compact. The court also misstated the record in connection with the affidavit of probable cause as to the instruction that was given at the photo array. The instruction that was given at the photo array was to have the victim identify anyone that she recognized there. The affidavit of probable cause indicated that the instruction was to identify anyone that you saw driving the car. Those are two very material different ways of stating that. Those are two very critical misstatements of the record by the court below. In addition to the misstatements, there were numerous instances where Mr. Andrews was not given the benefit of the inferences to which he was entitled. First off, I think we should note that the lower court stated that the victim was adamant about her identification of Andrews. That was incorrect based on the record, but she also left out that the victim was adamant. The one thing she was truly adamant about was the fact that the license plate that she saw on the first day was PAACG. The victim indicated that her recollection of that never wavered. The victim stated to the police and the dispatcher that she was 100% certain that that was the license plate that she saw on the first day. The next day, she identifies a vehicle that has a different license plate. She contends that it's the same. She acknowledges in the record that she knew when she told the police that it was the same, but it wasn't. In some instances, the court drew an inference in favor of the defendant when the inference should have been drawn in favor of the plaintiff. The point about being adamant exemplifies how the court construed the record at every turn in favor of the police officer. District court in the opinion states that Andrews was identified precisely because the victim thought the car that he was in was the one that was involved. If the court made that finding and the inference from that is that the victim never made this so-called positive identification, that was to a large degree the predicate for the courts concluding that there was probable cause. If you look at the record, there's absolutely nothing in this case that ties Mr. Andrews to this alleged luring. By the way, in the record that was before the court, there was conclusive evidence that Mr. Andrews was not there. We had cell phone records that conclusively established that he was in fact 35 miles away. Mr. Blank, can I just focus you? You're saying that the district court didn't draw these inferences. The district court did, in your client's favor, conclude that there were false and reckless omissions, false statements that went acknowledging the license plate issue that you mentioned, and even the overemphasizing of the certainty of the identification here by the victim. Yet, I took your argument to be that the main concern, the inference you thought wasn't drawn, was that the reason she believed the man from the second day to be the man from the initial incident was because of the car. But even that, the district court seems to acknowledge that the victim was conflating the two, identifying your client because seeing him on the second day. Ultimately, having brought all those inferences, the district court is saying it's not material because as in Wilson, there was a positive identification from a photo array. How do you distinguish this case from Wilson? Wilson is entirely distinguishable. In Wilson, there was a positive identification by a witness who was in the presence of the suspect, the alleged suspect, for approximately an hour. There were two people in the store where the alleged theft took place. One of those witnesses, when presented with the photo array, immediately picked that person out. Now, there were discrepancies with respect to the person that they selected in terms of height and some other issues. One of the people present didn't identify him, but there was, incontrovertibly, no dispute whatsoever that there was a positive identification of the suspect. And there was some other circumstantial evidence. Somebody else saw this man in the vicinity. So the cumulative evidence supported the finding that there was a positive identification, and this court has settled that if you have a positive identification, absent really extraordinary circumstances, that's going to sustain probable cause. We don't have that here. All we have is the victim identifying Mr. Andrews in the photo array, but making it very clear that that selection was based on the fact that she had seen him moments before in the parking lot. We cite to the record numerous references where she says that. The police officer himself, at trial, testified that he was told by her, I selected him because that's the person I saw getting out of the car in the parking lot. But it's also clear from the record that she believes that that is the same person who was engaged in the initial incident. Only because she's extrapolated his presence in the car as being the person. If you look at the record carefully, she says, the most I could say about the guy I saw, Mr. Andrews, was that he looked generally like the person I saw the day before. But keep in mind, her description of the person the day before was completely generic. The police say it was so vague we couldn't even use it to try to find someone. So you have a very vague description on the first day. On the second day, because Mr. Andrews looks somewhat like this vague description, and because he's in this car, which I have now concluded is the car that was involved, even though everybody knows it's not because the license plate is different, it's not a sedan, it's not a four-door, it's a two-door, the police know that that discrepancy, that that can't be the car. Why aren't those issues that go to the victim's perception and credibility? I mean, if the victim is conflating those two, yet makes an affirmative, positive identification from a photo array of this individual who, unfortunately for him, was your client. If she had been asked clearly, put out the person in this photo array who you saw attempting to lure you, and put aside what happened in the parking lot, and she said that's the person, then I think this is a different case. What we have on page 84 of the appendix reflects her testimony that she understood she was supposed to identify, quote, the guy that tried to get her in the car, close quote. If I may, I believe that if you look at her testimony, she makes it very clear in her deposition. And is that who you identified, the guy who tried to get you in his car? Yes. Okay. And she goes on, did you make it clear to the police that your identification with Andrews was due to the fact that you followed his car, and you thought the car that you were following was the one that was involved? And therefore, Andrews must have been the guy who did it. Did you make that clear? The answer is yes. Whatever her reasons, even if mistaken, for identifying your client as the guy who got her into the car, once she's made that identification, circling that photo, why doesn't this put us squarely in the realm of Wilson? It doesn't put you squarely in the realm of Wilson, because in Wilson you have somebody who actually says, I believe that that person that I've identified meets the description of the person I saw the day before. I am sure that that person is the person I saw yesterday. In our case, the witness never says that. What the victim says is, I'm not sure he's the guy, but he must be because he's been in the car. Where does she ever say, I'm not sure that's the guy? Because it appears on page 84 of the appendix here that she is saying that she identifies him as the guy that tried to get me into his car. Whatever words were used, that is what she understood she was identifying. And where I would ask the court to look at is, in her testimony she says, what sealed it for you, what made you believe that this person the second day, which your belief was the car was the one that was involved, correct? So her entire identification of Andrews is based on the fact that he was in the car. I have to find the site, Your Honor. I understand those arguments can be used to undermine her credibility as to whether it's correct that this is the same person. But she does appear to be affirmatively identifying him as the person she believes, even if mistakenly, to be the person who brought her into the car. And where I would disagree with the court is that there's a difference between what happened in Wilson, where the victim is saying, I know that that's the person. And in our case, where the victim is saying, and I have to get the site, I'll get it on my rebuttal, where she says that the most she can say is it's general and she's not sure, I'll have that site for you. But all she's saying is that I think that's the person because he's in the car, but I think it's similar. She never says that that's the person I actually saw the day before. And as long as the instruction given to her was pick somebody you recognize. And she tells Shulie, I picked this person because I just saw him get out of the car. That's entirely different than saying that I picked this person because I saw him the day before. Those are entirely different conclusions. Shulie testified. He was asked, did she tell you why you picked Andrews? And Shulie said, I was told she picked Andrews because that's the person she saw get out of the car. And that's why it would have been important for the affidavit of probable cause to report the fact that she described the vehicle as a four-door sedan when the vehicle she followed the next day was a three-door or two-door with a hatchback. And that the affidavit of probable cause should have included the fact that the only uniquely identifying information that the victim was able to provide from the first day was the license plate, PACG. She never changed her belief that that's what she saw the first day. So that excluded the Andrews vehicle, or at least raises a question of fact for the purpose of probable cause, excludes that vehicle as being the one that was involved. And then if you accept that the record shows, or at least raises a question of fact, and that's the issue, raises a question of fact of did she make a positive identification, as the court has suggested, or did she simply extrapolate his presence in the car to equate with him being the suspect? And I think that's what the record allows. And if the record does allow that, that's a question of fact for the jury. This is different than Wilson, very different than Wilson. It's different than most of the cases, the identification cases, and one cited by the affidavit. In each of those cases, there is really no dispute that there was a positive identification. You can challenge it. So you think the difference here is that in her narrative, there are internal inconsistencies that question the reliability of her identification? This goes to, in terms of the Wilson versus Russo analysis, this goes to the heart of her reliability. There's evidence in the record that at the police station, they didn't think she was reliable. I understand that. So there's evidence throughout the record that there was no positive identification, that the identification was strictly extrapolated. It raises a question of fact, and it goes to the jury. When you say evidence at the police station, they didn't believe she was credible, Are you talking about the testimony that comes out from Junior Preston about what's said at the time of trial? Preston testifies to a general course of discussion within the police station that she wasn't believed to be credible, including the other officer who was present, that was Ruiz. And it does include the statements made by Shuley at the time of the trial. In making reference to that in your brief, you also referenced some of the post-arrest conduct and communications. What relevance does that have to the determination about materiality at the time of the trial? Well, in any case, this court looked at events that occurred after the probable cause determination. For example, in this case, we pointed out that at the preliminary hearing, the victim, we believe, testified falsely about the license plates that she saw. Shuley was there. He didn't disclose that false testimony. He withheld the initial report. In any of the courts, you can look at that to show that the police officer had a closed mind, that it's part of the evidence that you take into account. You're not suggesting that there's probable cause to arrest, that that somehow dissipated in advance of the prosecution, or that if there was probable cause to arrest, that one could nonetheless state a malicious prosecution? Well, this court has never so helped. We did reference cases from other circuits that indicated that there's a continuing obligation on the part of a police officer, if they become aware of information that vitiates probable cause, to act upon that. And that continuing obligation can be recognized in a malicious prosecution cause of action. This court hasn't ever so helped. But the facts in this case, if we don't have a subsequent due process claim, which we've dropped, we think it's appropriate that there is a continuing obligation. It's a continuing restatement of torts, talks about malicious prosecution, including a continuing criminal prosecution when you know there's no basis for it. Anything else? Judge Nagler? I have no question. Thank you very much. Ms. Vanderwood, am I pronouncing that correctly? You are. But my Dutch grandparents might say it's someone differently. That's how I go with it. That's what I say. Okay. Good afternoon, I guess, at this point, Your Honors. Carol Vanderwood for Officer Scholey. I think at the end of Appellant's argument here, we get to the heart of the case, and that's really the sufficiency of the eyewitness identification. And the thrust of the argument, in my understanding of Appellant's position, is that the identification wasn't sufficient because it was improperly conflated with the issue of whether the car was accurately identified. And I think, Judge Krause, I think you get right to the heart of the issue that we cited in our brief, and that that's just not reflected in the deposition testimony of the plaintiff. The proposition that Appellant is making is that in identifying Mr. Andrews during the photo array, she was identifying the individual she saw getting out of the car the second day. But we said in Wilson that what we were looking for there, first of all, we were clear that we were not saying that a victim identification per se creates probable cause, however unreliable or unbelievable it may be. We were looking for a high level of certainty and there a forceful positive identification. Yes. Here we have her testimony, which at certain points includes saying that she thought they looked somewhat similar. We have your client's testimony about the question he asked, with some variation on that, that putting aside suggestiveness, and I'm not saying that that goes to probable cause per se or materiality, but in assessing whether we have a forceful positive identification here, the question that is being answered is obviously relevant. And then we also have that testimony from Junior Preston, to which your colleague on the side of the aisle was referring earlier, where there's some ambiguity about the time frame that your client is referencing in stating that she alleges that he wasn't sure her testimony was truthful. That is, was it referring to the time of hearing? We talked about truthfulness at the preliminary hearing or at the time of the identification during the photo array? It's not clear from Preston's testimony, where she relates your client's statement as to what the time frame is when he's saying that he thought the victim might be lying, whether that's as early as swearing out the affidavit or we're talking about the preliminary hearing or trial testimony. But in light of those ambiguities in the record, why isn't that sufficient to distinguish this case from Wilson, at least as to the high level of certainty that we said was sufficient in Wilson to conclude that the false statements were not material there? Because I think we have to look again at what this witness says she did with respect to this identification, and what she's repeatedly stated and cited in our brief and in the appendix to the record, that she understood during the photo array that she was identifying the man that tried to lure her into the car, that no suggestion was made by the police. To the contrary, she was not asked to identify the man who she saw getting out of the car the second day. She was clear, she was adamant, as the district court used that word adamant, that that was the individual. Now, if you go through her deposition in its entirety, you can see that appellant's counsel asked questions that appear to confuse her at times, and I think this is where you're talking about similar and some of this other language she used. I'll direct the court's attention to appendix of page 89, where we're going back and forth on redirect and re-examination, and we're trying to get this young girl, really, I think 17 at the time of her deposition, to just clearly explain what happened. And at page 89, I think at 88 of the deposition transcript, where Mr. O'Brien is asking her, I mean, again, to sort of substantiate the answers to the questions that he asked, and she responds and said that the questions asked on re-examination or the questions asked by other counsel in the room were simpler in meaning, such that she understood them and they were clear, and those are the answers she provided with respect to the photo array, her identification, and what she understood to have taken place during that photo identification. It's also important to note that she had gone through this process before, and in her deposition, she actually had been involved in another incident of child luring or somebody trying to get her into the car, and she again promptly called the police. There was a photo identification. She identified the individual, and eventually pled guilty. So she wasn't unfamiliar with the process, and she understood what she was doing, and she was very clear in her deposition that she believed, rightly or wrongly, that Mr. Andrews wasn't the one that tried to lure her into the car. And when we're looking at the Wilson case, and we're looking at what the court said would be the type of evidence sufficient to undermine an identification, the court gave two examples. One would be a situation where, for example, a witness identifies the suspect as 7 feet tall, but the police officer knows that the suspect is actually 5 feet tall. So that's significant. That might cause an officer to question the credibility of a witness. Another situation, they said, where we could maybe look at the eyewitness identification and possibly presume it wasn't sufficient for probable cause is a situation where you have a second witness who as adamantly identifies another suspect. Neither of those situations are here. We have a gentleman who generally matches the description given by Ms. Wagner on the day of the incident, and then she's so convinced that this is a man that she calls the police after the fact when she sees him getting out of the car on the second day and says, that's the guy. And when they do the photo line-up, she immediately circles his picture again and says, that's the guy. She's questioned at the deposition. At the preliminary hearing, she's questioned, and she points to him in the courtroom and says, that is the guy. At her criminal trial, again, she stands by it. That's the guy. But if we are in agreement, Wilson does not stand for the proposition that the photo array ID per se takes care of materiality. No, that is not the law in this circuit. It is not a per se finding of probable cause. At that point, this is a fact-bound inquiry. We're looking at, as we've instructed repeatedly, a reconstructed affidavit. Yes. And what that would look like. Looking at the totality of a reconstructed affidavit, including the corrections and insertions of those facts that were omitted, that it was, in fact, a different license plate, a different description, a different type of car. Even with the photo ID, if those things had been in the affidavit, how could a magistrate judge under those circumstances have found probable cause to issue a warrant, at least without further investigation by the officers? Well, I'll step back a little bit and say, with respect to the type of car, I don't think the record supports that the officer, at the time of the swearing-in of the affidavit, absolutely knew that the car was different. All right. Let's say that the license was different. Wouldn't that be a question of fact that would have to be resolved? Because there certainly is enough to, in favor of the plaintiff, infer that the officer had seen the car in the parking lot when she had called and said, I found the car and I got the guy. There's enough to infer that he actually did see the car before that affidavit was notarized. But what we're looking at, though, is what the officer did know. And this court in Dempsey has recently said... If there's a question of fact as to what he did know at the time, then it goes to the jury. I don't believe that is the case when we're looking at an issue of rock-solid identification by a witness. And really, at the end of the day... All right, let's assume that the officer knew that it was a hatchback vehicle that was in the parking lot, not the one that was seen on Highland Avenue. Shouldn't that have been in the affidavit? If he did know, then that was something that I think should have been relayed in the affidavit, yes. I don't believe there's any evidence that he did know. Doesn't the record reflect that he went two days before the date that the affidavit is sworn and filed, two days before he's gone to the parking lot and looked at the car? Again, this is unfortunate, the deposition of the officer here. But again, he's not at all certain, and he doesn't say that he actually looked at the car prior to sworn in the affidavit, and the dates on the affidavit are not perhaps as clear as they should have been. I think he started that right before he had inspected the car, and I think that's what his deposition shows. But again, as a district court found, looking at that testimony as independently reviewing it, certainly myself and as your court will, this court will. There's nothing in there to suggest that he actually did know that the car at the time was a different model number. And again, putting that aside, what we really have here and what plaintiff's counsels argued with the district court looked at is a discrepancy in the license plates. And again, that was something that plaintiff herself thought was significant. She acknowledged that there was a different license plate, that there was a different license plate number, and she said that still didn't dissuade her from believing that the individual in this car with a different license plate was the one that tried to lure you into the car. Right, but the focus is on the affidavit. The focus should be on the affidavit and what's in the affidavit. And the district court found that the affidavit didn't, but should have disclosed the discrepancy in the license plate. Correct. Correct. And the certainty of her identification should have been, or at least that she overemphasized the certainty of her identification. That the officer did overemphasize the certainty of her identification. But again, looking at the witness's testimony and her own deposition testimony after the fact, she's very clear that she believed that this individual was the one that tried to lure you into the car. That's looking at the testimony after the fact. But at the time the affidavit is presented, the affidavit, the district court also said, should have included the discrepancy. Correct. She identified in the initial report about a 35-year-old man with dark hair. Yes. And this is a 50-year-old individual with streaks of gray in his hair. Middle-aged man with streaks of gray in his hair. Yes. But again, that's when we get back to physical discrepancies, which is what we're looking at in Wilson. And we're looking at a height differential of approximately 7 inches. And this court said, you know, that's not enough. The fact that this gentleman in Wilson, the suspect's license, had him at 5'11", 5'10", and the witness has had him at approximately 6'3", and the fact that somebody else, another witness, physically placed him in an area outside of the scope of the robbery occurred, that's not enough to overturn what was a witness's certain identification of this individual as the suspect. And that's really, again, what we have here. We have one witness who's adamant, who's shown a photo array and immediately picks him out of the photo array. Don't we need to take account of the nature of the discrepancy? When someone is mistaken about height but based on facial recognition is making an affirmative identification of someone as a perpetrator, that seems different than looking at facial recognition and with the circumstances we have here suggesting that that recognition itself has been tainted by the intervening sighting of this individual in the parking lot. But that's an assumption that's refuted by the record. It wasn't tainted by the second sighting of the individual in the parking lot. And again, we have a young girl who's stopped on the street by an individual she describes as approximately 35 years of age with dark hair who tried to lure her into her car. The general description of Mr. Andrews, unfortunately for Mr. Andrews, tends to fit her initial interaction with this individual. But isn't the point for qualified immunity that whether it was or wasn't tainted, that's not for the officer to determine at this stage. The facts that are relevant that a reasonable officer would know, that a magistrate would want to know in making the probable cause determination, need to be in the affidavit of probable cause so that the magistrate can make that determination. Yes, but again, we're focusing here on the issue of materiality and whether or not these discrepancies would have overcome the forceful positive identification of Ms. Wagner. And again, there was a preliminary hearing and Mr. Andrews was represented by counsel who asked at the time, and I know Mr. O'Brien suggests that the officer here had a responsibility to somehow interject in those proceedings and maybe point out additional information. But certainly Mr. Andrews was represented by counsel who brought up the issue of the conflicting license plates before the magistrate judged there. And when plaintiff, when Ms. Wagner, I'm sorry, responded with the JDG, the second, which Mr. O'Brien counsel claims is a misrepresentation or her lying on the stand, Mr. Andrews' criminal counsel didn't follow up. So he obviously had the information regarding the first license plate at the time he was at the preliminary hearing. He brought it up before the judge and then didn't follow up on the issue to push it with her, to push the credibility issue at that point in time. And again, as this court recently said in Dempsey, when you're dealing with probable cause, it doesn't require officers to resolve conflicting evidence or determine whether their determinations of credibility were, in retrospect, accurate. They believe at the time that Ms. Wagner was credible. She immediately picked out this individual from the photo array. She consistently testifies that she wasn't asked to do anything other than identify the man that tried to lure her into the car on the first day. I mean, that's consistent throughout. Based on that fourth school identification and notwithstanding the discrepancy in the license plate, they believed that that was sufficient probable cause. Again, probable cause just being a fair probability that the individual, in fact, committed the crime. And that's the standard we're looking at. Any other questions? Can you address briefly, and I'd like to ask your adversary as well, if we conclude that there was a violation of the right here, is there any question about whether that right is clearly established? I think there's a significant question. There's a wide body of case law, certainly not bind and press, and I think Dempsey's the most recent published opinion, but there's a wide body of unpublished opinions, several of which are cited in our brief, that go to the issue of the sufficiency of eyewitness identification. And essentially the overwhelming majority of those find that, you know, it's not a per se standard, but you're starting at a very high threshold when you have that fourth school eyewitness identification. And you have to have significant exculpatory evidence for something that significantly undermines the credibility of a witness to overturn that. I mean, there are cases we've cited in our brief where witnesses have, at a preliminary hearing, recanted their identification. And that's not enough to take away the initial finding of probable cause. That's different. You know, we're talking about the affidavit of probable cause and what was in it and what was omitted in a finding by district judges. Some of these things were recklessly omitted or there were purely false assertions in it. You know, I think the focus, you want to focus on her certainty after the fact, but the focus has to be on this affidavit. I think the affidavit... That's clearly established in terms of their obligation to present all material information. Correct. And at the time, and again, when we're looking at what the district court has to look at to determine whether or not summary judgment is appropriate, is to look at this forceful identification in light of the other possible evidence cited by plaintiffs to say that that undermines the credibility of this eyewitness identification. And I don't think that that is there in this case. That was not established in this case. And I think the district court properly held that it was not. But do you agree that goes to materiality, that goes to the probable cause question as the first prong, was there a violation? If we conclude adverse to your client on that question, isn't the right not to be arrested without probable cause clearly established? Again, we have to look at whether or not there is a violation of a constitutional right. And I think that the materiality analysis is not separate from the analysis of whether or not there's been a violation. Because the court to decide whether or not there was a lacking probable cause has to look both at the claimed omissions or claimed falsehoods and look at that also in the context of the materiality. So my disagreement as to... So I would say no. I think materiality also goes to the issue of whether or not there's a knowing violation. But my question went to the second prong of qualified immunity. That is, there's no dispute here as to the right in question being one that is clearly established. Correct? Correct. Whether it's a knowing violation of a clearly established right is where we have an issue. Knowing violation. And again, just to reiterate, I think this was a forceful eyewitness identification. I think that appellant's theory that somehow this witness conflated the issue of the car with the issue of her identification is not reflected in the record. And I think that we have to look at what happened in that room at the time that there was an identification, whether that was forceful, looking at the totality of the circumstances and her unwavering identification throughout. And again, we can't... I mean, this evidence was presented including the issue with, for example, the... I think we understand your argument. Thank you very much. Thank you. Addressing the first question, the last question raised by the Court of Qualified Immunity, I don't think qualified immunity applies. It was clearly established that a police officer cannot submit an affidavit that contains false and misleading facts. So that's clearly established. It's also clearly established that you can't arrest somebody without probable cause. If the corrected affidavit raises a question of fact as to whether or not there was probable cause to charge Mr. Andrews with luring a child, then that goes to the jury, and if the jury determines that there wasn't probable cause based upon what was in that affidavit, the Fourth Amendment right is clearly established. I had made reference to the fact that Officer Shuley... The defendant continues to say that there was an adamant identification of Andrews. There is nothing in the record that supports that as conclusively established as an undisputed fact. There's just after-the-fact indications of that. Here's what Shuley said when he was asked why the victim selected Andrews from the photo array. Okay, this is at page 350 of the record. Okay, and was... She indicated to you that was the individual that she saw getting out of the vehicle. Is that right? Answer, yes, she said that's him. Question, that's the guy she saw getting out of the vehicle and going into the business. Is that right? Answer, yes. So the record supports the conclusion that she did not select him because she saw him the day before and that's the person she saw. She selected him because, for whatever reason was in her mind, she picked out that car. Even though the car didn't fit the description, even though the car had a different license plate, she picked him because he got out of that car. That's not the same thing as Wilson. That is not a positive identification. And all of these after-the-fact identifications are not relevant. Is there evidence that Officer Shuley saw the hatchback vehicle? Oh, absolutely. We have cited in the record, I think it's at 151 to 153, where he asked the question, could you have taken a photograph on November 26th when you went to the parking lot? Yes. Was there anybody else there with you when you went to the parking lot on November 26th? No, I went by myself. I can't remember. It's at the record, I think, between 151 and 153. There's absolute conclusive evidence, statements made by Shuley, that he went to the parking lot on the day that the victim came to the police station on the second day. When he's asked, when did you go to the parking lot, he says he can't recall an exact time. It would have been after speaking with him. He's asked questions, when you went to the parking lot on this day. He doesn't say, I didn't go there on that day. He responds, I went there. He even says, I think it's at page 558, that the car was a compact when he went to see it. There are several instances in the record where the question is asked of him, including on the second day date. And he, what other day could he have gone to the parking lot and seen the vehicle? He'd say he finished speaking with the victim and went to look at the vehicle after he spoke to the victim. That's in that series of questions beginning at 151 through 153. At a minimum, as Judge Banansky has indicated, it raises a question of fact, of whether he went and knew. It's not as if there's nothing in the record to support the contention that he knew the vehicle was different. He says he knew the vehicle was different. He answers questions that he went there on the day when he interviewed him on the second day. Well, he does not indicate, at least on these pages, when he went there. Other than, implicit in the question is the date. The question is asking, when you went there on the 26th? And he answers the question. He doesn't say, well, I didn't go there on the 26th. And he doesn't give an explanation for why he omitted that information, such as, I didn't know about the discrepancy. He does not. There's nothing. All the questions that were asked of him imply that he went there that day, and he never rejects that. And there is no, as the court has said, any explanation as to why he didn't conclude that. I'd have to go look at the record again, Your Honor, but I'm pretty certain that the questions are asked with the date. Well, there's one question here. So if you wanted to, you could have taken a photograph of the vehicle as you saw it in the parking lot on November 26, 2012. Yes, sir, I could have if I wanted to. And so it's implicit in the question. He doesn't deny that. I think at a minimum I get to present that to the jury. And this is an inference you could draw in your favor. Right. And also at page 607, the victim is asked, so I just want to know if I'm correct, that at that point what you see is somebody who generally fits the description of the person that you saw the day before. Answer, yes. Question, it wasn't as if you said, my goodness, I know for sure that's the guy. Correct. So if you couple the fact that I think we understand your argument. Thank you, Judge. Judge Nagy. No questions. Thank you. Thank you very much. Again, the case was extremely well-argued. We'll take the matter under advisement and we'll stay with it.